**Anthony FERRAIOLI, Plaintiff,**

v.

**Hyman B. CANTOR, Hy C. Corp., Denison Mines, Ltd., Goldfield Corp. and General Baking Company, Defendants.**

**No. 65 Civ. 1546.**

United States District Court
S. D. New York.
June 14, 1966.

Wolf, Popper, Ross, Wolf & Jones, New York City, for plaintiff; Paul L. Ross, Donald J. Robinson, New York City, of counsel.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Denison Mines Ltd., appearing specially for purposes of this motion only; William E. Jackson, Edward J. Reilly, Jr., Patrick Owen Burns, New York City, of counsel.

LEVET, District Judge.

This is a class action brought by a former shareholder of the General Baking Company (hereinafter "the Company") on behalf of himself and other persons similarly situated to recover an alleged premium which was paid to the defendant Denison Mines Ltd. (hereinafter "Denison") on the sale by Denison of its controlling interest in the Company to defendant Goldfield Corp. (hereinafter "Goldfield"). The amended complaint purports to assert that the sale and the actions associated with it constitute a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[1] and of Rule 10b–5, 17 CFR § 240.10b–5, promulgated thereunder.[2]

Denison now moves pursuant to Fed. R.Civ.P. 12(b) for dismissal of the amended complaint upon the following grounds:

1. That this court lacks jurisdiction over the subject matter;

2. That venue is improper in the Southern District of New York; and

3. That service of process was improper on the ground that service of process outside the United States is in-

---

[1]. Section 10(b) provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

[2]. Rule 10b–5 provides:
"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security."

valid and that at the time of service Denison was a foreign corporation not doing business in the State of New York.

## SUBJECT MATTER JURISDICTION

The amended complaint alleges that the Company is one of the largest companies in the bread baking industry in the United States, is incorporated under laws of the State of New York, and maintains its executive offices in the Borough of Manhattan, City and State of New York. It further alleges that in April, 1963 Denison, a Canadian corporation with its principal office in Toronto, Province of Ontario, Canada, began to acquire the common stock of the Company and by April, 1965 had acquired 33%) of such stock which represented a controlling interest in the Company. In connection with the possession of control, Denison is alleged to have had its nominees elected to the Board of Directors and placed in particular offices, to have maintained control over the affairs of the Company through use of the United States mails and other means of interstate commerce, and to have designated proxies to vote its controlling block of stock at stockholders' meetings in New York through use of the mails and other means of interstate commerce. None of the above statements alleges in and of itself a violation of the Securities Exchange Act of 1934.

The purported violation by Denison is alleged in paragraphs Thirteenth, Seventeenth and Ninteenth of the amended complaint, which read as follows:

"*THIRTEENTH:* Between February 1, 1965 and May 17, 1965 defendants Denison and Goldfield, acting in concert, began to make use of knowledge and information of material facts known to them by reason of their relationship to the Company, which information and knowledge was not known to the general investing public, and, acting in concert, began to employ devices, schemes and artifices to defraud and engaged in acts, practices and a course of conduct which was intended to and did operate as a fraud upon the Company and its shareholders through the use of the mails and other means or instrumentalities of interstate commerce in connection with the purchase and sale of stock of the Company then owned by Denison and certain persons associated with Denison. As part of the aforesaid, Denison agreed to and did transfer the power to control the business, management, financial policies, affairs and activities of the Company with its substantial operations and assets within the United States to defendant Goldfield. To accomplish the aforesaid, Denison agreed to and did cause its designees who were serving and acting as officers and directors of the Company within the United States to resign their respective offices in order that designees of Goldfield could be selected in their place and stead, through the use of the mails and other means or instrumentalities of interstate commerce. As part of the aforesaid, Goldfield agreed to and did acquire the shares of the Company owned by Denison at a price substantially in excess of the current market price then prevailing in order to induce Denison to cause control to be transferred to Goldfield."

"*SEVENTEENTH:* Defendant Denison failed to inform the plaintiff and other public shareholders of the Company of the existence of the offer, in violation of its specific and fiduciary duties to the Corporation and the shareholders thereof and as part of a device, scheme, and artifice to defraud and engaged in acts, practices and a course of conduct which was intended to operate as a fraud upon the Company and its shareholders in connection with the purchase and sale of the common stock of the Company."

"*NINETEENTH:* Defendant Denison failed to obtain said equal opportunity for the plaintiff and other public shareholders of the Company, in violation of its specific and fiduciary

duties to the Company and its shareholders and as part of a device, scheme and artifice to defraud and engaged in acts, practices and a course of conduct which was intended to and did operate as a fraud upon the Company and its shareholders in connection with the purchase and sale of the common stock of the Company."

The substance of the alleged violation is the sale by Denison of its controlling interest in the Company to Goldfield at a price allegedly in excess of the market price without disclosing to the other shareholders the existence of the Goldfield offer or obtaining such offer for the other shareholders. The plaintiff alleges that he sold his stock in the Company on the New York Stock Exchange at the time of the negotiations prior to the Denison sale and that he would not have done so if all the facts had been disclosed.

Subject matter jurisdiction of the United States Courts as well as venue and service of process as to actions arising under the Securities Exchange Act of 1934 is governed by Section 27 thereof, 15 U.S.C. § 78aa, which provides in pertinent part:

"The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.
* * *"

For the purposes of this motion, both plaintiff and defendant accept the proposition stated in Judge MacMahon's memorandum of December 28, 1965,[3] that federal legislation and, in particular, the Securities Exchange Act of 1934, presumptively apply only to acts committed within the United States and that such acts must be alleged as a predicate to jurisdiction over the subject matter.[4]

Defendant Denison argues that this court lacks jurisdiction over the subject matter because the amended complaint fails to allege that either the sale of control or the negotiations leading thereto occurred within the United States. In support of this proposition, the affidavit of H. A. Willis, a vice-president of Denison, states that the sale to Goldfield took place on May 17, 1965 at a meeting of the Board of Directors of the Company held in Toronto, Canada, and that all negotiations leading thereto took place in Canada. However, the amended complaint does allege that Denison transferred the power to control the business and management of the Company *within the United States* to Goldfield and, that to accomplish the aforesaid, Denison caused its designees who were serving as directors and of-

3. Judge MacMahon dismissed the original complaint in this action on the ground that it failed to allege acts committed in the United States by the defendant Denison.

4. The question of the possible extraterritorial application of the securities laws has not been briefed. See Continental Ore Co. v. Union Carbide & Carbon Corp., 370 U.S. 690, 704–705, 82 S.Ct. 1404, 8 L.Ed.2d 777, (1962), United States v. The Watchmakers of Switzerland Information Center, Inc., 1963 Trade Cas. ¶ 70,600 (S.D.N.Y.1962), and, in light of my decision, I find it unnecessary to reach that issue. Cf. Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252 (1952).

ficers of the Company "*within the United States*" to resign their offices in order that designees of Goldfield could be selected in their place "*through use of the mails and other means or instrumentalities of interstate commerce.*"

Denison's argument is, in effect, that violation, if any, must be found in the sale and negotiations leading thereto, all of which occurred outside the United States, and that these acts are separable from the mechanics of its exercise of control over the Company. That argument ignores the realities of the violation alleged here. The alleged violation is a transfer of control at a premium without disclosing the premium offered and without obtaining equal opportunity for other shareholders; that is the course of conduct which is alleged to violate Rule 10b–5.

A transfer of control involves more than negotiations and a sale. Necessarily there must be resignations of directors; the selling stockholder must cause them to resign. The plaintiff alleges that such resignations were brought about within the United States through use of the mails and other instrumentalities of interstate commerce. That is an United States act which is an inseparable part of the alleged violation and an act which Denison does not deny in its papers. Furthermore, the amended complaint alleges that the actual transfer of control took place within the United States. The only denial of this allegation is in the fact that the sale itself took place in Canada, but the control of a New York corporation with its executive offices in the Borough of Manhattan in the City of New York necessarily resides in the United States, where decisions are made. Cf. Perlman v. Feldmann, 219 F.2d 173, 50 A.L.R.2d 1134 (2nd Cir. 1955). Accordingly, the transfer of control may be viewed as occurring in the United States. Another step in the alleged violation is Denison's failure to inform other stockholders of Goldfield's offer and to obtain equal opportunity for them. The amended complaint is silent as to where these omissions took place, but that defect, in my opinion, is not destructive of jurisdiction over the subject matter where other acts committed within the United States are alleged which are inseparable parts of the alleged violation. Moreover, where, as here, Denison is in Canada and the corporation which it controls is in New York, it is difficult to say where the omission actually occurs. All in all, it is my opinion that the course of conduct which is alleged as a violation of the Securities Exchange Act of 1934 in this case occurred at least in part within the United States and that jurisdiction of the United States courts over the subject matter of this action is sustained by those acts.

## IMPROPER VENUE

Under Section 27 of the Securities Exchange Act, quoted above, venue of actions to enforce liability created by the Act is properly laid either in a district wherein any act constituting the violation took place or in a district where the defendant is found, is an inhabitant, or transacts business. The affidavit of H. A. Willis, submitted by Denison, states that Denison is a Canadian corporation, not an inhabitant of the State of New York nor doing business there. The plaintiff does not controvert these statements but, rather, contends that venue exists in this district because an act constituting the violation took place here.

Examination of the amended complaint reveals that the only fact alleged with any relationship to the Southern District of New York is that the executive offices of the Company are in the Borough of Manhattan, New York City. The bareness of the amended complaint, however, is not decisive because allegations showing proper venue are not required in a complaint. Ripperger v. A. C. Allyn & Co., 113 F.2d 332 (2nd Cir.), cert. denied 311 U.S. 695, 61 S.Ct. 136, 85 L.Ed. 450 (1940); 1 Moore, Federal Practice, ¶ 0.140 [1.–4] (2nd ed. 1964). The affidavits submitted by the plaintiff add little to his amended com-

plaint with regard to venue facts. The affidavits refer to acts committed in New York, which contains four federal districts, or in New York City, which contains two such districts, and not to acts committed specifically in the Southern District of New York. Paragraph 14 of the affidavit of plaintiff's attorney states that Denison caused the resignation of its designees on the Company's Board of Directors in New York and Denison increased the size of the Company's Board in New York to effectuate the transfer of control. There is no allegation that the United States mails or instrumentalities of interstate commerce were used in the Southern District of New York to cause any of the acts which are part of the violation alleged in this case. While it is true that the undenied allegation that the executive offices of the Company are in the Southern District of New York may give rise to an inference that important steps in the transfer of control took place in this district, see Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960), that possible inference together with plaintiff's amended complaint and affidavits, in my opinion, do not provide a sufficient basis for a conclusive determination that venue is properly laid in this district.

■ It is fair to say, however, that in all likelihood facts sufficient to sustain venue in this district do exist, although the affidavits do not show them. It also appears to me that the venue facts are within the knowledge of the defendant Denison, may not be known to the plaintiff, and are an appropriate subject for discovery. In such circumstances, dismissal of the complaint is not the proper remedy for imprecision of pleadings in light of the rule that venue facts do not have to be pleaded affirmatively. A more appropriate remedy, and the one which I am ordering here, is to deny defendant Denison's motion to dismiss the amended complaint for improper venue without prejudice and to grant the plaintiff leave to pursue discovery as to venue facts. Such

discovery shall be completed on or before September 1, 1966, at which time Denison may again move to dismiss the amended complaint for improper venue if it is so advised. If no such motion is made after the completion of discovery and on or before October 1, 1966, Denison's objection to venue will be deemed waived.

## IMPROPER SERVICE OF PROCESS

Denison objects to service of process on the ground that service of process outside the United States is invalid and that at the time of service Denison was a foreign corporation not doing business in New York. The summons and complaint were served personally upon Harry A. Willis, a vice-president of Denison, in Toronto, Canada.

■ Under Section 27 of the Securities Exchange Act of 1934, "process * * * may be served * * * wherever the defendant may be found." This section when read together with Rule 4 of the Federal Rules of Civil Procedure permits service in a foreign country. Securities and Exchange Comm. v. VTR, Inc., 39 F.R.D. 19 (S.D. N.Y.1966). The only substantial question here is whether due process of law prevents the acquisition of personal jurisdiction over Denison.

■■ The requirements of due process as to the exercise of personal jurisdiction over a defendant are met when the defendant has certain minimum contacts with the jurisdiction "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Here Denison controlled a United States corporation whose executive offices are in this district. In light of that connection with this district, there cannot be any doubt that the minimum contacts which are necessary for due process purposes exist, especially where the present case arises from that control and where the case concerns an area which is subject to extensive fed-

848

eral regulation. See International Shoe Co. v. State of Washington, supra; McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

Denison's motions to dismiss the amended complaint for lack of subject matter jurisdiction and for improper service of process are denied.

Denison's motion to dismiss the amended complaint for improper venue is denied without prejudice. Plaintiff is granted leave to pursue discovery as to venue facts. Such discovery is to be completed on or before September 1, 1966. After such date and on or before October 1, 1966 defendant Denison may move again to dismiss the amended complaint for improper venue. If no such motion is made, Denison's objection to venue will be deemed waived.

Settle order on notice.