Thomas W. BELL, Plaintiff-Appellant,

v.

EXXON COMPANY, U. S. A., a division of Exxon Corporation, a corporation and Humble Oil & Refining Company, a corporation, Defendants-Appellees.

No. 75–2513.

United States Court of Appeals,
Ninth Circuit.

May 5, 1978.

As Amended May 23, 1978.

Rehearing Denied June 28, 1978.

Stephen T. Mugglebee, National City, Cal., for plaintiff-appellant.

Jack D. Fudge, of McCutchen, Black, Verleger & Shea, Los Angeles, Cal., for defendants-appellees.

Before BROWNING, GOODWIN and KENNEDY, Circuit Judges.

PER CURIAM:

Appellant's first three claims pertain to his primary contention that appellee deprived him of sufficient gasoline supplies unfairly and in derogation of appellant's contractual rights. The district court granted summary judgment on the ground that appellee's failure to deliver on its contractual commitments was excused by virtue of the voluntary allocation program, promulgated under the Economic Stabilization Act of 1970, *as amended,* 12 U.S.C. § 1904, note (Supp.1977) and the Emergen-

cy Petroleum Allocation Act of 1973, *as amended,* 15 U.S.C. § 751, *et seq.* (1976). Clearly, the power of federal courts to enforce private contractual agreements is subject to the limitations of public policy expressed in federal statutes. *Hurd v. Hodge,* 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1948). Appellant argues that there is a factual dispute as to the fairness of the particular allocation scheme developed by appellee. However, appellant has failed to sustain his burden of submitting affidavits containing facts (not mere allegations) sufficient to rebut appellee's prima facie showing that its allocation program conformed to applicable federal guidelines and regulations. *See First National Bank v. Cities Service,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Town House, Inc. v. Paulino,* 381 F.2d 811, 814 (9th Cir. 1967).

Appellant's fourth claim alleges fraudulent inducement to enter into the May 17, 1973, sales agreement. Appellant claims reliance on the allegedly false representations of Mr. Apeles, an Exxon sales representative, that despite the anticipated fuel supply shortage appellee would supply appellant's gasoline requirements if he entered into the new agreement. The district court ruled that appellant could not rely on Mr. Apeles' statements because Mr. Apeles did not have actual authority to bind Exxon to supply gasoline in any amount. However, appellant's affidavits raised an issue as to whether Mr. Apeles possessed *ostensible* authority to bind Exxon in this manner. Cal.Civ.Code § 2317 (West 1954). Under California law, the existence of ostensible authority is a question of fact, *Yanchor v. Kagan,* 22 Cal.App.3d 544, 550, 99 Cal.Rptr. 367, 371 (1971). Exxon argued below that appellant's fraud claim was barred by the rule excluding parol evidence. Cal.Civ.Code § 1856 (West 1955). The argument is without merit. Although parol evidence is not available to vary the express terms of a written agreement, it is admissible to show fraudulent inducement to enter into a contract, *Bank of America v. Lamb Finance Co.,* 179 Cal.App.2d 498, 3 Cal.Rptr. 877 (1960), "and this is true 'even though the

contract recites that all conditions and representations are embodied therein,' " *Morris v. Harbor Boat Building Co.,* 112 Cal.App.2d 882, 888, 247 P.2d 589, 593 (1952), as it does in this case. While it is true that the contract reserves to Exxon the right to make allocation of available gasoline supplies among its customers, appellant alleges that Mr. Apeles represented to him that Exxon would exercise that right in a manner that fully protected his service needs, both because of prior representations and the relatively small amount of gasoline that he required. As such, the oral statements relied upon do not contradict the express terms of the agreement. *Simmons v. California Institute of Technology,* 34 Cal.2d 264, 274, 209 P.2d 581, 587 (1949) (en banc). Fraud is a question of fact to be determined at trial. It was therefore inappropriate to dispose of appellant's fourth claim by summary judgment.

The district court has jurisdiction of appellant's fourth claim under 28 U.S.C. § 1332(a). Appellant alleged damages in excess of $10,000 because he was fraudulently induced to enter into and perform the contract, and there is diversity of citizenship between the parties.

█ Summary judgment was properly granted as to appellant's fifth claim. In his fifth claim, appellant seeks to enjoin appellee from evicting appellant from his service station. The district court concluded that the lease and sales agreements between appellant and Exxon were properly terminated under their respective terms. Appellant has raised no substantial issue of law or material fact to controvert this conclusion.

Affirmed in part, reversed in part, and remanded for further proceedings.

KENNEDY, Circuit Judge, concurring in part and dissenting in part:

I dissent from that portion of the court's opinion which reverses the trial court's grant of summary judgment on appellant's fourth claim. Even assuming the Exxon sales representative had authority to bind Exxon, evidence of his allegedly fraudulent statements is inadmissible under the California parol evidence rule, Cal.Civil Proc. Code § 1856 (West 1955), since those statements directly contradicted the terms of the written contract.

The opinion of the court correctly states that oral statements may be admitted to show fraudulent inducement to enter into a contract even when the contract recites that it is fully integrated. To be admissible, however, the parol evidence offered must "tend to establish some independent fact or representation, some fraud in the procurement of the instrument, or some breach of confidence concerning its use, and not a promise directly at variance with the promise in the writing." 34 Cal.Jur.3d *Fraud and Deceit* § 80, at 730 (1977). An oral promise which antedates a written contract is not admissible to prove fraud if it is "in direct contravention of the unconditional promise" contained in the parties' written agreement. *Bank of America National Trust & Savings Ass'n v. Pendergrass,* 4 Cal.2d 258, 263, 48 P.2d 659, 661 (1935); *accord, Simmons v. California Institute of Technology,* 34 Cal.2d 264, 274, 209 P.2d 581, 587 (1949) (en banc); *cf. Masterson v. Sine,* 68 Cal.2d 222, 65 Cal.Rptr. 545, 436 P.2d 561 (1968) (en banc) (parol evidence admitted to prove existence of separate oral agreement as to any matter on which document is silent and which is not inconsistent with its terms). *See generally* Sweet, *Promissory Fraud and the Parol Evidence Rule,* 49 Calif.L.Rev. 877 (1961).

*Simmons v. California Institute of Technology,* 34 Cal.2d 264, 209 P.2d 581 (1949) (en banc), does not support the conclusion that evidence of the alleged oral representations is admissible. That case expressly states that

"a distinction must be made between * * * a parol promise * * *, which *by its very nature is superseded by the final writing, inconsistent with it,* and a promise made with no intention of performing the same, *not inconsistent with the writing,* but which was the inducing cause thereof."

*Id.* at 274, 209 P.2d at 587, *quoting Cobbs v. Cobbs,* 53 Cal.App.2d 780, 783, 785, 128 P.2d 373, 374 (1942) (emphasis supplied). In applying that rule to the facts before it, the California Supreme Court expressly considered whether or not the statements constituting the alleged fraudulent inducement contradicted the terms of the written agreement:

> [T]he [oral] promise was directed to the matter of the use of the money, whereas the terms of the memorandum dealt with nothing more than the form of the payment of it. These promises by Dr. Clark as to the use of the royalties were the fraudulent inducement, or motive, for the contract, but they were *not incorporated in or superseded by the terms of the agreement* as to payment. The two are *not inconsistent or "at variance,"* inasmuch as they deal with wholly different matters. It was, therefore, proper to receive parol evidence to prove the promises of Dr. Clark.

*Id.* (emphasis supplied).

Application of the *Simmons* analysis to the case here reveals that the alleged statements made to induce Bell to enter into the contract were superseded and contradicted by the express terms of the agreement. Bell grounds his claim of fraud on an alleged promise that by entering into the sales agreement of May 17, 1973 he would be protected as to his requirements in the event of any temporary fuel supply shortage Exxon should encounter. The written agreement included the following provision:

> During any period in which, for any reason, Seller's supplies of commodities of the kind deliverable under this Agreement which are available, in Seller's judgment, for sale at the place or places from which deliveries hereunder are normally shipped or crude petroleum from which such commodities are derived from any of Seller's then existing sources of supply are curtailed or cut off or are inadequate to meet Seller's obligations to its customers, the obligation of Seller under this Agreement shall, at its option be reduced *as Seller may determine* to allocate fairly among its customers, whether under contract or not, such available supplies of commodities then in storage and such quantity as Seller may receive . . . . Seller shall not be required to make up deliveries omitted on account of any such causes.

C.R. at 32 (emphasis supplied). The language of the contract clearly indicates that a fuel shortage would give Exxon the option to allocate fuel among its customers, and that such allocation would relieve the company of the duty to deliver quantities otherwise required under the agreement. The alleged oral representations that Exxon would continue to meet Bell's fuel requirements even in the event of a shortage directly contradicts the written terms of contract. The contract reserved to Exxon the absolute discretion to determine and implement a fair allocation among its customers in the event of a fuel shortage. Bell does not argue that the terms of the agreement were ambiguous or that the oral statements should be admitted to explain the meaning of the contract. *See Masterson v. Sine,* 68 Cal.2d 222, 65 Cal.Rptr. 545, 436 P.2d 561 (1968) (en banc). Since the alleged oral promise contravened the rights Exxon reserved to itself in the May 17, 1973 agreement, evidence of the oral statements is inadmissible under California law to prove fraud in inducement. *Shyvers v. Mitchell,* 133 Cal.App.2d 569, 284 P.2d 826 (1955) (oral promise that guarantor would not be held liable directly contradicted unconditional written contract of guaranty); *Partamian v. Flodine,* 95 Cal.App.2d Supp. 931, 213 P.2d 790 (App.Dep't Super.Ct.1950) (oral promise that buyer could cancel but contract expressly not subject to cancellation).

I would therefore conclude that the trial court was correct in granting summary judgment for Exxon on appellant's claim of fraudulent inducement.